## 50085. EAGERTON v. THE STATE.

EVANS, Judge.

A police officer of Eastman, Georgia received information from a reliable informant two or three days before the last Sunday in April 1974, that illegal drugs would be flown into the Eastman airport. No search warrant was obtained, but the airport was put under surveillance on that Sunday. A state trooper, who was on "radar alert," arrived at the airport and was told of the suspected criminal activity. The trooper agreed to observe the road leading away from Eastman and the airport. The suspect arrived by plane, and was observed in an automobile which turned in the direction of the state trooper. The suspect was stopped by the trooper for a routine check of licenses. He was first arrested for an expired tag, and upon the immediate arrival of the Eastman officers thereafter, the drugs were observed in plain view in a box inside the automobile.

The defendant was indicted separately for two offenses of possession of dangerous drugs. His motions to suppress this evidence were denied. Defendant appeals. *Held:*

1. A limited right to stop automobiles on the highway is allowed under the state's police power. *Anderson v. State,* 123 Ga. App. 57 (2) (179 SE2d 286);

*State v. Swift,* 232 Ga. 535 (1) (207 SE2d 459).

2. Having received reliable information from the Eastman police officers that illegal drugs would arrive at the Eastman airport, and having been alerted as to the automobile in question, the state trooper had sufficient probable cause to stop the moving vehicle and search for the suspected illegal drugs, all of which was based upon information to the officers by a reliable informant that the drugs would arrive on that particular Sunday. *Register v. State,* 124 Ga. App. 136 (183 SE2d 68), and cases cited on pages 138-139.

3. The drugs were then observed after the defendant was stopped for a routine traffic check, who was then arrested for driving with an expired tag. The police officers who arrived immediately saw the drugs in plain view. See *Anderson v. State,* 123 Ga. App. 57 (1) (179 SE2d 286); *Lowe v. State,* 230 Ga. 134, 136 (2) (195 SE2d 919); Ker v. California, 374 U. S. 23, 43 (83 SC 1623, 10 LE2d 726); Harris v. United States, 390 U. S. 234 (88 SC 992, 19 LE2d 1067); *State v. Swift,* 232 Ga. 535 (1), supra.

4. Under the circumstances set out above, there was not an illegal search and seizure of the illegal drugs, and the court did not err in denying the motion to suppress.

*Judgment affirmed. Deen, P. J., Clark, Webb and Marshall, JJ., concur. Bell, C. J., Pannell, P. J., Quillian and Stolz, JJ., dissent.*

Submitted January 14, 1975 — Decided April 7, 1975 — Rehearing denied April 28, 1975 — ▮

*Smith & Harrington, Will Ed Smith,* for appellant.
*Albert D. Mullis, District Attorney,* for appellee.

Stolz, Judge, dissenting.

The motion to suppress should have been sustained for the following reasons:

*First.* There is *no evidence* that the Eastman police received information from a reliable informant two or three days before the last Sunday in April, 1974, that *illegal drugs* would be flown into the Eastman-Dodge County airport by the defendant. Officer Darrell Oliver

was asked the question, "And you had some information from somebody that Mr. Eagerton was going to fly into the Eastman-Dodge County airport, did you not?, to which officer Oliver replied, "That is correct." (T, 2)

While the transcript is replete with evidence that the Eastman police officers had the airport under surveillance all day Sunday awaiting the defendant's arrival by airplane carrying drugs, there is *no evidence* that they received *any* information from a reliable informant that the defendant would be bringing in illegal drugs.

*Second.* There is no evidence in the record as to how the anonymous informer obtained his information or when his information was obtained so as to enable the officers to distinguish the information received from just another rumor circulating in the underworld. *Moreland v. State,* 132 Ga. App. 420, 421 (208 SE2d 193) and cits.

*Third.* Assuming that the Eastman police officers did have sufficient information to justify a stakeout of the Eastman-Dodge County airport and to reasonably suspect that the defendant would be flying in illegal drugs, there is absolutely no excuse for their failure to obtain a search warrant for the defendant's airplane and automobile. The factual situation presented sub judice bears no resemblance to that presented in *Anderson v. State,* 123 Ga. App. 57 (2) (179 SE2d 286) and *State v. Swift,* 232 Ga. 535 (1) (207 SE2d 459). By their own testimony, the officers had at least two days' notice of what was expected to occur. (T,3) They had the defendant's automobile under surveillance from 9:30 a.m. until the defendant's plane landed after 5 p.m. The officers knew that the airplane that the defendant was piloting was a red and white, single-engine plane. (T,31) There was ample information and opportunity for the officers to obtain a valid search warrant for the defendant, his automobile and the airplane he was piloting. There were no exigent circumstances shown in the record to justify a failure to do so.

*Fourth.* In the absence of a search warrant, there was no justification for stopping the defendant's automobile and the subsequent observation of the suspected drugs. The record shows that the Eastman police officers were

staked out to intercept the defendant if he turned right as he drove his automobile from the airport, but the defendant turned left. Whereupon, Officer Oliver testified, ". . . and I picked up the microphone and I radioed the Trooper [who was on radar patrol] in the State Patrol car and asked him to get him for us because he was going that way." (T,11) Also, "Q. Then when you radioed the Trooper that Mr. Eagerton was turning his way, or just what did you tell the Trooper? A. I asked him to stop him for us. Q. Stop him for you? A. That's right. Q. You asked the Trooper to stop him for you all? A. Yes. That's right. Q. For what? A. We had reason to believe that there was drugs in that vehicle. Q. All right. It was — A. It happened on city property and we wanted to investigate it. Q. All right. It was on a drug charge was it not? A. That is correct." I concede there is testimony in the record that the defendant was stopped by the trooper for having an improper tag. The trooper did not testify, thus such testimony is nothing more than hearsay and hence without probative value. This is particularly so in view of the Eastman police officer's positive testimony that the state patrolman was radioed to stop the defendant because they believed that the defendant was transporting illegal drugs.

*Fifth.* The officers did not have the right to seize the suspected drugs on the "plain view" theory as expressed in Coolidge v. New Hampshire, 403 U.S. 443 (91 SC 2022, 29 LE2d 564). "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification — whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating

at last emerges. . .

"The rationale for the 'plain view' exception is evident if we keep in mind the two distinct constitutional protections served by the warrant requirement. First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that *any* intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity . . . [cits.] The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings. . . [cits.] The warrant accomplishes this second objective by requiring a 'particular description' of the things to be seized.

"The 'plain view' doctrine is not in conflict with the first objective because plain view does not occur until a search is in progress. In each case, this initial instrusion is justified by a warrant or by an exception such as 'hot pursuit' or search incident to a lawful arrest, or by an extraneous valid reason for the officer's presence. And, given the initial intrusion, the seizure of an object in plain view is consistent with the second objective, since it does not convert the search into a general or exploratory one. As against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement. Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it.

"The limits on the doctrine are implicit in the statement of its rationale. The first of these is that plain view *alone* is never enough to justify the warrantless seizure of evidence . . .

"The second limitation is that the discovery of evidence in plain view must be inadvertent . . . But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it,

the situation is altogether different. The requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as 'per se unreasonable' in the absence of 'exigent circumstances.' " Coolidge, supra, p. 466.

The "plain view" doctrine applies where an item is in plain view in the automobile when it comes into the possession of the law enforcement authorities *"inadvertently and unmotivated by any desire to locate incriminating evidence by any unlawful search and seizure."* (Emphasis supplied.) *Lowe v. State,* 230 Ga. 134, 136 (195 SE2d 919). In the case at bar, the law enforcement officers were purposely looking for, the evidence in question; there was nothing inadvertent or unmotivating in the search and seizure. I believe the motion to suppress should have been sustained, and respectfully dissent.